# United States Court of Appeals for the Federal Circuit

---

**TREBRO MANUFACTURING, INC.,**
*Plaintiff-Appellant,*

**v.**

**FIREFLY EQUIPMENT, LLC** AND
**STEVEN R. APOSHIAN,**
*Defendants-Appellees.*

---

2013-1437

---

Appeal from the United States District Court for the District of Montana in No. 13-CV-0036, Judge Sam E. Haddon.

---

Decided: April 9, 2014

---

ANTOINETTE M. TEASE, Antoinette M. Tease, P.L.L.C. Intellectual Property and Technology Law, of Billings, Montana, argued for plaintiff-appellant.

TIMOTHY B. SMITH, Parr Brown Gee & Loveless, P.C., of Salt Lake City, Utah, argued for defendants-appellees. With him on the brief was TERRY E. WELCH.

---

Before RADER, *Chief Judge,* LOURIE, and PROST, *Circuit Judges.*

RADER, *Chief Judge.*

The United States District Court for the District of Montana denied plaintiff-appellant Trebro Manufacturing, Inc.'s (Trebro) motion for a preliminary injunction against defendants-appellees FireFly Equipment, LLC and Steven R. Aposhian (collectively, FireFly) for infringement of U.S. Patent No. 8,336,638 (the '638 patent). *Trebro Mfg., Inc. v. FireFly Equip., LLC*, No. 13-CV-0036, 2013 WL 1655993 (D. Mont. Apr. 17, 2013) (*Order*). Because the district court abused its discretion in denying Trebro's motion, this court vacates the order and remands for further proceedings consistent with this opinion.

I.

Trebro acquired the '638 patent and U.S. Patent No. 7,721,814 (the '814 patent) on March 12, 2013, from 1045929 Ontario Ltd. (Ontario). *See* J.A. 297–305. Trebro also simultaneously granted Brouwer Turf Inc. (an affiliate of Ontario) a fully paid-up, royalty-free nonexclusive license to the patents. J.A. 302. Brouwer Turf had apparently been delinquent in royalty payments to Trebro under an unrelated license, which motivated the assignment. *See* J.A. 729.

On March 14, 2013, Trebro sued FireFly for infringement of the '638 and '814 patents, as well as for copyright infringement on certain software. J.A. 127–37. The next day, Trebro moved for a preliminary injunction on all infringement counts, but ultimately opted to pursue the motion only with respect to the '638 patent. J.A. 700.

The technology at issue involves "sod harvesters"—vehicles having knives that cut sod pieces from the ground, conveyor belts to transport the pieces, and mechanisms to stack them on a pallet. FireFly's accused product is a sod harvester called the ProSlab 150. *Order* at *1. Trebro also sells sod harvesters, including one called the SC2010 Slab. J.A. 763.

The '638 patent was filed June 28, 2012, issued December 25, 2012, and is titled "Method and Apparatus for Harvesting and Picking Up Sod."  The named inventors are Gerardus J. Brouwer and Robert Milwain.  The patent claims priority based on a series of applications dating back to a provisional filed February 4, 2005.  On the record before this court, FireFly does not contest priority on the '638 claims.  Trebro also claims further priority of invention to November 2004 through an affidavit from named inventor, Mr. Brouwer, and a corroborating memorandum from his attorney at that time.  J.A. 810–14.

Trebro asserted claims 1, 2, 4, 6, and 9.  Claim 1 is pertinent for this appeal:

> 1. A sod harvester for harvesting a sod piece from a ground surface and stacking said sod piece on a support, the sod harvester comprising:
>
> a)  a sod cutting knife for cutting said sod piece from said ground surface;
>
> b)  at least one inclined conveyor movable at faster than ground speed;
>
> c)  a substantially horizontal conveyor, wherein said at least one inclined conveyor is adapted to carry said sod piece from said cutting knife to said substantially horizontal conveyor; and
>
> d)  a sod carrier movable between a first position above said horizontal conveyor and a second position, wherein, in said first position, said sod carrier is adapted to removably secure said sod piece to said sod carrier when said sod piece is on said horizontal conveyor, wherein said sod carrier is adapted to release said sod piece at said second position,

> wherein said *horizontal conveyor is moveable in a vertical direction toward said sod carrier.*

'638 patent col. 24 ll. 19–38 (emphasis added). Both the infringement and invalidity disputes on appeal focus on the last limitation of claim 1—a horizontal conveyor that moves vertically.

Figure 1 of the '638 patent generally illustrates an example of a sod harvester having features as in claim 1:



FIG. 1

In Figure 1, the horizontal conveyor is mounted on a "bed frame" 140 that moves vertically via piston and cylinder 142. '638 patent col. 10 ll. 17–28. The parties agree that the '638 specification only explicitly describes one embodiment for the last limitation of claim 1 (a "horizontal conveyor [] moveable in a vertical direction"). Specifically, the specification describes raising and lowering a bed frame to which the conveyor is attached, as in Figure 1. *See* '638 patent col. 10 l. 18–col. 11 l. 45.

Claim 10, which depends from claims 1 and 9, explicitly covers a scenario where a bed frame is raised and lowered to effect the vertical lifting of the horizontal conveyor:

> 10.  A sod carrier according to claim 9, *further comprising a bed frame, said horizontal conveyor being mounted on said bed frame, wherein said bed frame is movable in a vertical direction* toward and away from said sod carrier, thereby vertically moving said horizontal conveyor.

'638 patent col. 25 l. 5–col. 26 l. 3 (emphasis added).

While the preliminary injunction motion was pending, FireFly requested ex parte reexamination of the '638 patent.  It based the request primarily on two patents invented by the same inventive entity (Brouwer and Milwain)—U.S. Patent Nos. 7,407,362 ('362 patent), published January 6, 2005, and 6,779,610 ('610 patent), published April 1, 2004.  J.A. 111–12.  After ordering reexamination, the U.S. Patent and Trademark Office (PTO) terminated the proceeding because neither of the patents "qualify as prior art because [they are] not considered as being [invented] by 'others' when considering 35 U.S.C. §[§ ]102(a) or (e). . . . and because [they were each published] within the 1 year grace period . . . afforded under § 102(b)."  ECF No. 38 at 8.

## II.

The district court held a preliminary injunction hearing on April 11, 2013.  *Order* at *1.  At the hearing, Trebro's president, Steven Tvetene, testified, as did FireFly's owner, Steven Aposhian.  Mr. Tvetene testified about several sod harvesters that are, or were, on the market.  In response to questioning about whether any such sod harvesters exhibited the feature of a horizontal conveyor that moves vertically, he testified that two such sod harvesters—the Kesmac Slabmatic 3000 and 1500—did.

J.A. 747. He also testified that neither of these products entered the market until 2006 or later. *Id.*

Mr. Tvetene further testified that the sod harvester market is very small. He stated that the only competitors in this market are Trebro, FireFly, and Mr. Brouwer's company (a licensee to the '638 patent). J.A. 728–29. Mr. Tvetene testified that Trebro sells roughly eight sod harvesters per year at around $210,000 each. J.A. 731. He stated that a lost sale is approximately $50,000 in lost profit, which is roughly equal to the cost of one employee. *Id.* Although he admitted that none of Trebro's currently available sod harvesters practice the '638 patent, J.A. 729–30, Mr. Tvetene testified that Trebro's SC2010 Slab sod harvester directly competes for sales with FireFly's ProSlab 150, J.A. 763.

Mr. Tvetene testified that Trebro will lose market share if FireFly continues to sell its allegedly infringing product. J.A. 733. He asserted that every sale of the ProSlab 150 is a lost sale to Trebro. J.A. 731, 734. He further stated that the lost market share is "[p]robably not" recoupable. J.A. 733. Mr. Tvetene also testified that Trebro will lose customers. For example, FireFly's first sale of its ProSlab 150 was to a Trebro customer. J.A. 731–32. He also testified that "once a farmer buys a sod harvester," the farmer will not need "to replace it for many years in the future." J.A. 733. Finally, Mr. Tvetene testified that Trebro "will have to lay people off" in the absence of an injunction. J.A. 734, 736–38. Trebro is a small company with eighteen employees. J.A. 734.

FireFly's owner, Mr. Aposhian, testified that the ProSlab 150 does not infringe claim 1 of the '638 patent. Specifically, he stated that it does not meet the last limitation requiring vertical movement of the horizontal conveyor. Instead, according to Mr. Aposhian, the horizontal conveyor belt merely "changes shape." J.A. 777–79. He did testify, though, that with this shape change,

"[t]here's an element of up" with respect to lifting a sod piece for the sod carrier to receive it. J.A. 791.

Mr. Aposhian testified that FireFly entered the sod harvester sales market to meet the need for an improved sod harvester other than those currently available. *See* J.A. 769–70. Mr. Aposhian testified that, in addition to the shape change of the horizontal conveyor belt, the ProSlab 150 has other beneficial features. These include its weight balance (because it is lighter), its "electric stacker" (which stacks sod pieces higher), and its "pickup mechanism" (which picks up sod pieces faster). J.A. 770–76.

Mr. Aposhian testified that he formed FireFly in January 2010. J.A. 769. Until FireFly made the ProSlab 150 commercially available, its primary business was selling replacement parts, approximately 80 percent of which was for Trebro machines. J.A. 794–95; *see also* J.A. 769–70. In addition to the one ProSlab 150 already sold at the time of the injunction hearing, Mr. Aposhian testified that FireFly had "pre-sold" six more. J.A. 793–94. Finally, he testified that an injunction against FireFly would put it out of business. J.A. 789.

The district court denied Trebro's preliminary injunction motion the day before a "major trade show for the sod harvester industry." *Order* at *1. The court found no substantial likelihood of success on the merits for failing to meet the "horizontal conveyor [] moveable in a vertical direction" limitation. *Id.* at *3. The court stated that "the ProSlab 150 does not raise the horizontal bed frame, as is required by the '638 patent." *Id.* Rather, the ProSlab 150's "belt changes shape to effect the lifting of the sod slab, [so] there is no need for the entire frame and drive mechanisms to move." *Id.*

The district court also found a substantial question as to validity, stating that "[t]here is a controversy that the feature of raising the horizontal conveyor towards the sod

carrier was not a novel or non-obvious feature." *Id.* at *4. The court stated that "[t]his feature was known in the sod harvesting industry, and was also known by the inventors and assignee." *Id.* As support for this finding, the district court stated that "[t]he testimony of Gregg Tvetene establishes that several sod harvesters built in the past have the feature of raising the horizontal conveyor . . . . Claim 1 is not novel or non-obvious." *Id.* The court also pointed to FireFly's reexamination request, asserting that validity "is a question best left to the [PTO], but the Court does question the validity of the '638 Patent." *Id.*

Finally, the district court found no irreparable harm. The district court dismissed Trebro's evidence as speculative. *Id.* at *3. The court asserted that "Gregg Tvetene was not able to testify that Trebro has suffered actual harm, but he did state that loss of a sale of a sod harvester will result in the loss of a $50,000 gross profit, which could result in employees being laid off." *Id.* The district court dismissed the evidence of "alleged lost customers and theoretical loss of market share" as "purely monetary relief" because they can be "compensated through an award of lost profits or a reasonable royalty." *Id.* at 4.

Trebro filed an interlocutory appeal to this court, seeking review of the preliminary injunction denial.

## III.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2009). An accused infringer can defeat a showing of likelihood of success on the merits by demonstrating a substantial question of validity or infringement. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013). A preliminary injunction is "an extraor-

dinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22.

"The grant, denial, or modification of a preliminary injunction . . . is not unique to patent law, so this court applies the law of the regional circuit when reviewing and interpreting such a decision." *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013). However, "the Federal Circuit has itself built a body of precedent applying the[] general [preliminary injunction] considerations to a large number of factually variant patent cases, and [] give[s] dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998).

The Ninth Circuit "review[s] the district court's grant of a preliminary injunction for abuse of discretion." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013). "In reviewing the denial of a preliminary injunction, [the Ninth Circuit] determine[s] whether the district court abused its discretion in applying the law or whether it clearly erred in formulating its findings of fact." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992). "A court abuses it discretion when it applies an incorrect legal rule or relies upon 'a factual finding that [is] illogical, implausible, or without support in inference that may be drawn from the record.'" *Valle del Sol*, 732 F.3d at 1014 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009)). "[T]o reverse a denial of a preliminary injunction, the appellant 'must show not only that one or more of the findings relied on by the district court was clearly erroneous, but also that denial of the injunction amounts to an abuse of the court's discretion upon reversal of the erroneous findings.'" *Aria Diagnostics*, 726 F.3d at 1300 (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1555 (Fed. Cir. 1994)).

Because a plaintiff must prove each element of the preliminary injunction test to prevail at the district court, Trebro's appeal can only succeed here if this court reverses the district court's ruling in its entirety. This court concludes that the district court erred in determining that Trebro failed to prove a likelihood that FireFly infringes the '638 patent, that FireFly raised a substantial question of the '638 patent's validity, and that Trebro failed to prove a likelihood of irreparable harm. Accordingly, the district court abused its discretion in denying Trebro's motion for preliminary injunction. Each issue is discussed in turn below.

IV.

To prove a likelihood of success on the merits, a patentee must prove that success in establishing infringement is "more likely than not." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012). To prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim(s). *See, e.g.*, *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). Here, Trebro has shown that the ProSlab 150 likely infringes the '638 patent.

The parties' infringement dispute focuses on whether the ProSlab 150 practices the last limitation of claim 1: "wherein said horizontal conveyor is moveable in a vertical direction toward said sod carrier." The district court did not engage in explicit claim construction, but nevertheless held that "rais[ing] the horizontal bed frame . . . is required by the '638 Patent." Because the ProSlab 150 does not raise a horizontal bed frame, the district court consequently found no likelihood of infringement.

The district court erred in construing claim 1 to require a "bed frame." First, nothing in the language of claim 1 mentions or implies that a "bed frame" must be part of, or otherwise attached to, the claimed "horizontal

conveyor." *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). Second, imposing the use of a bed frame in claim 1 improperly imports a limitation into the claim from a preferred embodiment. *See, e.g.*, *id.* at 1323 (noting courts must "avoid the danger of reading limitations from the specification into the claim"). The specification describes as one embodiment lifting the horizontal conveyor by lifting the bed frame (to which the conveyor is attached) via piston and cylinder mechanisms. *See* '638 patent col. 10 l. 18–col. 11 l. 5, Fig. 1. This description does not disclaim or otherwise limit other ways of raising the horizontal conveyor. *See Phillips*, 415 F.3d at 1325 (holding claimed "baffles" were not limited to structures disclosed in a preferred embodiment). Moreover, the specification does not even suggest that the term "horizontal conveyor" necessarily also refers to a "bed frame" to which it is attached. Therefore, although attached to the bed frame, the horizontal conveyor may be lifted without implicating the bed frame at all.

Finally, and convincingly, claim 10 (which depends from claims 1 and 9) is explicitly limited to the "bed frame" embodiment envisioned by the district court. Namely, claim 10 specifies "said horizontal conveyor being mounted on said bed frame, wherein said bed frame is movable in a vertical direction toward and away from said sod carrier, thereby vertically moving said horizontal conveyor." To read the bed frame limitation from claim 10 into claim 1 (even though claim 10 also includes moving the bed frame "away from" the sod carrier) renders the term redundant and offends principles of claim differentiation. *See, e.g.*, *Phillips*, 415 F.3d at 1314–15 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."

(citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004))).

The district court also clearly erred in finding that the ProSlab 150's horizontal conveyer is not "moveable in a vertical direction toward [its] sod carrier." The record shows otherwise. FireFly is correct to state that the horizontal conveyor *belt* "changes shape" to move the sod piece toward the sod carrier. *See* Appellee's Br. 12; J.A. 778–79. However, it only changes shape because it is a part of the horizontal conveyor moving vertically toward the sod carrier.

The screen shots below from a video of the ProSlab 150 in action show this vertical movement:





J.A. 671 (screen shots from video at 1:27 and 1:28).

The first picture shows the horizontal conveyor level at Time 1 with a sod piece on it.  The second picture shows the conveyor vertically raised at Time 2 to present the sod piece to the sod carrier.  Even Mr. Aposhian testified that "[t]here's an element of up" in moving the sod piece toward the sod carrier.  J.A. 791.

On this record, therefore, Trebro has established that it is "more likely than not" to succeed on infringement. The district court abused its discretion in determining otherwise. That certain components of the ProSlab 150 involved in raising the sod may not move vertically does not defeat the likelihood of infringement. The only basis on which the district court found no likelihood of success was the erroneous requirement that a bed frame be moved vertically. Absent an explicit claim construction favorable to FireFly (which, of course, does not include a "bed frame"), this court holds that the district court erred. This error of law in claim construction underlies, in part, the district court's abuse of discretion.

## V.

Even if a patentee shows the likelihood of proving infringement, the accused infringer can defeat the likelihood of success on the merits by raising a substantial question as to the validity of the patent in suit. *Aria Diagnostics*, 726 F.3d at 1304. A claim is anticipated if a single prior art reference discloses each and every limitation claimed. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544–45 (Fed. Cir. 2011). A claim is obvious in light of the prior art "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a) (pre-America Invents Act). Obviousness is a legal conclusion based on underlying factual determinations. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). These factual determinations include the scope and content of the prior art, the differences between the prior art and the claims, the level of ordinary skill in the art, and any objective indicia of nonobviousness. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966).

Here, the district court clearly erred in finding a substantial question as to the '638 patent's validity. First, this court assumes that the district court's unconstrained statement that "Claim 1 is not novel or non-obvious" must have been a misstatement. The district court's brief discussion of invalidity considered only one feature of the patent—the lifting of the horizontal conveyor. *See Order* at *4. This court appreciates the short timeframe for consideration of a preliminary injunction motion. However, the district court's analysis in this case did not adequately support an ultimate conclusion that claim 1 was anticipated or obvious.

Second, even the district court's conclusion that the vertically-moving horizontal conveyor "was not a novel or non-obvious feature" is clearly erroneous. *See id.* The district court based this conclusion solely on Mr. Tvetene's testimony about other sod harvesters that had been on the market—but without regard to the '638 patent's priority date. Mr. Tvetene testified undisputedly that the only two sod harvesters having a vertical-moving horizontal conveyor were not on the market until 2006 or later. J.A. 747. Neither party challenges that the '638 patent's priority dates back, at least, to the February 2005 provisional application. Thus, these later-sold sod harvesters (the Kesmac Slabmatic 3000 and 1500) cannot be considered prior art. This court need not consider at this time whether Trebro has proven priority to November 2004 based on the Brouwer affidavit and the purportedly corroborating attorney memorandum.

Finally, the parties on appeal initially heavily disputed the scope and content of two prior patents invented by the same inventors of the '638 patent, Brouwer and Milwain—the '362 and '610 patents. However, as the PTO recognized after initially granting ex parte reexamination based on these patents, neither reference is prior art. Both patents have the same inventive entity as the '638 patent and thus cannot qualify as prior art under

(previous) 35 U.S.C. § 102(a) or § 102(e).  *See, e.g.*, *In re Katz*, 687 F.2d 450, 454 (CCPA 1982).  And both patents emerged less than a year prior to February 2005 and thus cannot qualify as prior art under the version of § 102(b) in effect for this case.

Accordingly, before this court, the record does not contain a single prior art reference that raises a substantial question as to the '638 patent's validity.  Without even a reference to call validity into question, the district court abused its discretion in concluding there was no likelihood of success on the merits on the basis of validity.

## VI.

The district court also abused its discretion in determining that Trebro did not show a likelihood of irreparable harm.  The district court clearly erred in finding as speculative the harm Trebro is likely to suffer if its direct competitor is able to sell an infringing product in the small, niche sod harvester market.  The district court stated that "Gregg Tvetene was not able to testify that Trebro has suffered actual harm, but he did state that loss of a sale of a sod harvester will result in the loss of a $50,000 gross profit, which could result in employees being laid off."  *Order* at *3.  Further, the district court committed legal error by giving no weight to Trebro's evidence of likely loss of market share and customers.  *Id.* at *4.  The district court claimed instead that "purely monetary relief" would suffice because Trebro can be "compensated through an award of lost profits or a reasonable royalty."  *Id.*

First, the uncontroverted testimony of Mr. Tvetene showed that harm to Trebro is not speculative.  The sod harvester market at issue in this case is a tiny market with only three players—Trebro, FireFly, and Mr. Brouwer's company (a licensee of the '638 patent). J.A. 728–29.  Trebro sells only roughly eight sod harvesters per year.  J.A. 731.  The opportunities to attract

customers and make sales are thus scarce in this tight market. FireFly is a new entrant on the market of sod harvester sales. And every sale to FireFly is essentially a lost sale to Trebro. *See* J.A. 731. This lost sale also translates into a lost customer: "[O]nce a farmer buys a sod harvester, they're not going to replace it for many years in the future." J.A. 733. Moreover a single lost sale is a sizeable percentage of the yearly market in this area.

At the time of the hearing, FireFly had already sold one ProSlab 150 to a customer who had previously purchased a Trebro sod harvester. J.A. 731–32. And FireFly had already "pre-sold" six sod harvesters. J.A. 793–94. Given the realities of this business, the record shows that an infringing product in this market inflicts a real nonspeculative harm on Trebro.

Second, Trebro is very likely to lose significant market share as well as customers. *See* J.A. 733. The district court's blanket dismissal of evidence showing likely loss of market share and loss of access to customers was an error of law. This court has often explained that such factors are pertinent to the irreparable harm inquiry. *See Aria Diagnostics*, 726 F.3d at 1304 (Fed. Cir. 2013) (preliminary injunction); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (preliminary injunction); *see also Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336–37 (Fed. Cir. 2013) (permanent injunction); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013) (permanent injunction); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152–54 (Fed. Cir. 2011) (permanent injunction).

Even though Trebro may be able to estimate the price of sod harvesters, how much profit it makes per sod harvester, and how many sod harvester sales it makes (and thus may lose) per year, that does not automatically mean money damages are adequate. Rather, the record shows that a loss of market share and customers is a loss

that Trebro is not likely to recover.  Additionally, Trebro asserted that it will have to lay people off in a company with eighteen employees worldwide due to FireFly's alleged infringement.  This record evidence further supports the conclusion that money damages are likely inadequate in this market.

Finally, on this record, the fact that Trebro does not presently practice the patent does not detract from its likely irreparable harm.  To the contrary, Trebro and FireFly are direct competitors selling competing products in this market.  Thus, the record strongly shows a probability for irreparable harm.  *See Order* at *1 ("FireFly is a direct competitor of Trebro."); J.A. 728–29, 754, 763 (testifying that SC2010 Slab is "the device that competes with FireFly").  In multiple instances, this court has held that a party that does not practice the asserted patent may still receive an injunction when it sells a competing product.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (overturning denial of permanent injunction despite non-practicing product, noting "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm"); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702–03 (Fed. Cir. 2008) (affirming permanent injunction where Broadcom sold indirectly competing, non-practicing product, supporting showing of irreparable harm); *cf. High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556–57 (Fed. Cir. 1995) (reversing grant of preliminary injunction due to "lack of commercial activity by the patentee," but noting "a patentee's failure to practice an invention does not necessarily defeat the patentee's claim of irreparable harm").

Accordingly, the district court abused its discretion in denying the preliminary injunction based on a record that strongly suggests both a likelihood of success on the merits and a likelihood of irreparable harm.

VII.

Because it found the first two elements of the *Winter* test for preliminary injunctions unmet, the district court did not consider the final two elements. Rather than deciding these issues in the first instance on appeal—whether the "balance of equities tips in [Trebro's] favor, and [whether] an injunction is in the public interest"—this court vacates the order and remands the case to the district court for further proceedings in light of this opinion. *See, e.g., Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1363 (Fed. Cir. 2002) ("[T]he appropriate remedy is not to reverse with instructions to enter the injunction, as Guttman asks, but rather to vacate the trial court's previous order and remand for further proceedings in light of this opinion.").

To guide the district court's analysis of the final two *Winter* factors, this court makes the following observations of the record. With respect to the balance of equities, the evidence suggests that Trebro is an established company in the sod harvester market. Trebro is losing business to a new entrant selling a likely-infringing product. The evidence also suggests that Trebro's main business is, and has been, selling sod harvesters. The evidence further suggests that FireFly's primary business has been (until recently) selling replacement parts—primarily for Trebro's sod harvesters. J.A. 769–70, 794–95. Each party presented testimony that an injunction, or lack thereof, will drastically harm its business. *See* J.A. 734, 737–38, 789.

The evidence also demonstrates that Trebro recently acquired the patent from Mr. Brouwer's company and then filed suit almost immediately. According to Trebro, the previous owner was having difficulties meeting its financial obligations to Trebro. J.A. 729. FireFly argues the inventors filed for the '638 patent in 2012 only after seeing the ProSlab 150 in action. Appellee's Br. 3–4, 5

n.1. Yet, the February 2005 provisional application already disclosed the idea of a vertical-moving horizontal conveyor (attached to a bedframe). *See* J.A. 29–30. Additionally, the evidence that FireFly is the only non-licensed competitor in the market suggests that this patent will have significantly less value if Trebro cannot use it to exclude an infringing product from the market. J.A. 739.

Finally, as to the public interest, there is scant evidence on this record showing that an injunction would harm the public. The patent deals with sod harvesting and covers a small market that may not have a broad-reaching effect.

## VIII.

Because the district court abused its discretion in denying a preliminary injunction, and because the district court did not consider the final two *Winter* factors, this court vacates the district court's order and remands the case for further proceedings consistent with this opinion.

### **VACATED AND REMANDED**