NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CELGARD, LLC,**
*Plaintiff-Appellee*

v.

**LG CHEM, LTD., LG CHEM AMERICA, INC.,**
*Defendants-Appellants*

---

2014-1675

---

Appeal from the United States District Court for the Western District of North Carolina in No. 3:14-cv-00043-MOC-DCK, Judge Max O. Cogburn, Jr.

---

Decided: August 12, 2015

---

MARTIN RICHARD LUECK, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, argued for plaintiff-appellee. Also represented ANDREW DOUGLAS HEDDEN, JAMIE R. KURTZ; BRYAN J. VOGEL, Robins Kaplan LLP, New York, NY.

MICHAEL J. MCKEON, Fish & Richardson, P.C., Washington, DC, argued for defendants-appellants. Also represented by KEVIN WHEELER, LEAH A. EDELMAN; JOHN A. DRAGSETH, Minneapolis, MN.

MARK S. DAVIES, Orrick, Herrington & Sutcliffe LLP, Washington, DC, for intervenor Apple Inc.

MARK MICHAEL SUPKO, Crowell & Moring, LLP, Washington, DC, for amicus curiae General Motors LLC.

DOMINIC FRANCIS PERELLA, Hogan Lovells US LLP, Washington, DC, for amicus curiae Ford Motor Company.

---

Before O'MALLEY, WALLACH, and HUGHES, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Celgard, LLC ("Celgard") brought suit against LG Chem, Ltd. and LG Chem America, Inc. (collectively, "LG") in the United States District Court for the Western District of North Carolina, asserting infringement of certain claims of U.S. Patent No. 6,432,586 ("the '586 patent") and several state law claims. LG appeals the district court's entry of a preliminary injunction prohibiting LG from making, using, selling, or offering for sale its products that potentially infringe the asserted claims in the '586 patent. For the reasons explained below, we *reverse* the preliminary injunction and *remand.*

## I. BACKGROUND

From 2005 through 2008, Celgard supplied LG with uncoated "base films" for use in LG's batteries for consumer-electronic products ("CE products"). LG would coat the Celgard base films with ceramic for use as "separators" in the batteries. The separators are used to separate the anode from the cathode in a battery. In 2008, the parties entered into discussions regarding Celgard becoming LG's exclusive supplier of base films for batteries to be used in electric vehicles ("EVs"). It is undisputed that LG

executed this ceramic coating process on the base films supplied by Celgard for both the CE products and EVs.

The parties began negotiating the terms of a potential agreement, and the parties eventually agreed to a Memorandum of Understanding ("MOU") in anticipation of entering into a long term supply agreement. After the parties entered into the MOU, however, the relationship between the parties began to fall apart over disputes about the price of the base films. In June 2014, LG gave Celgard notice that it was being phased out as a supplier for its EV program beginning in September 2013. Celgard sent its final shipment of base film to LG in July of 2013 and then filed this suit in January 2014.

LG moved to dismiss for lack of personal jurisdiction and improper venue, and Celgard moved for a preliminary injunction. In the same order, on July 18, 2014, the district court addressed both motions. Regarding LG's motion to dismiss, without ruling on the merits, the district court allowed Celgard's motion for jurisdictional discovery into whether LG had minimum contacts in North Carolina. The district court referred the case to the magistrate judge for limited discovery and disposition on the issue of personal jurisdiction.

Turning to Celgard's motion for a preliminary injunction, the district court performed the four-factor test for evaluating a motion for a preliminary injunction. Regarding the likelihood of success on the merits, the district court stated only that, "[h]aving reviewed [the] description of the claims detailed in the claim charts, it appears likely that the SRS sold, offered for sale, used, and imported into this country by defendant infringes at least claim 1 of the '586 patent." *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-cv-43, 2014 WL 3699999, at *4 (W.D.N.C. July 18, 2014) ("*Preliminary Injunction Order*"). As to the second factor, the district court "concluded that if the alleged infringing activity were allowed to continue, it is

very likely that plaintiff will suffer irreparable harm in the absence of preliminary relief. This harm includes plaintiff losing goodwill, laying off employees, and loss of market share to at least some competitors who appear to be engaged in infringing activity." *Id.* at *5. In balancing the equities for the third factor, the court considered LG's right to source materials from the supplier with the lowest price and Celgard's right to protect misappropriation of its patented technology. The district court found that, absent injunction, "plaintiff is likely to be shut out of [the] automotive marketplace," whereas LG can simply pay a slightly higher cost to source its materials from Celgard with the injunction. *Id.* at *5.

With respect to the public interest, the district court explained that, although the public is interested "in being able to buy products at the lowest possible price through a free and robust market," Celgard's patent was "for a very important technological development that ultimately benefits consumers by allowing for the delivery of safe electric power to mobile devices by reducing the risk of fire posed by dendrite growth." *Id.* The district court reasoned that an injunction that prevents an infringer from profiting from theft of protected technology is not a hardship because the law already prohibits his actions. Furthermore, the district court stated that it "has no reason to believe that defendant's ability to produce goods will be in any way impacted as it appears that plaintiff is able to provide the products necessary for production." *Id.* Because it concluded that all four factors weighed in favor of granting Celgard's request for a preliminary injunction, the district court granted the motion. The court then stayed the injunction pending appeal.

LG appeals the district court's grant of Celgard's motion for a preliminary injunction. We have jurisdiction over this interlocutory appeal under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1) (2012).

## II. Discussion

We apply regional circuit law—here, Fourth Circuit law—when reviewing a district court's decision to grant a preliminary injunction. *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1367 (Fed. Cir. 2008). The Fourth Circuit reviews the district court's decision for abuse of discretion. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). "Pursuant to this standard, we review the district court's factual findings for clear error and review its legal conclusions de novo." *Id.* As explained below, in this case, the district court abused its discretion granting Celgard's motion for a preliminary injunction.

### A. Jurisdiction

LG argues that the district court legally erred by failing to consider whether it had personal jurisdiction over LG before granting the preliminary injunction. We agree. Although we subsumed the issue of a district court's jurisdiction in the likelihood of success prong of the preliminary injunction test in the past, we also explained that "[f]ailing to consider [the district court's jurisdiction] was legal error." *U.S. Ass'n of Importers & Textiles & Apparel v. U.S. Dep't of Commerce* ("*USA-ITA*"), 413 F.3d 1344, 1348 (Fed. Cir. 2005). This is for good reason. A district court cannot enjoin a party if it does not have jurisdiction over that party. *See, e.g.*, *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) ("We hold, therefore, that the district court should not have issued the preliminary injunction against [the defendant] without determining whether it had jurisdiction over the party enjoined."); *cf. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 n.1 (1982) (Powell, J., concurring) ("A district court must have personal jurisdiction over a party before it can enjoin its actions"). At a minimum, the district court must determine that there is a "substantial probability" that it has jurisdiction over the claim that

requires preliminary injunctive relief. *United States v. First Nat'l City Bank*, 379 U.S. 378, 390 (1965) ("It is basic to traditional notions of equity that[,] to justify the issuance of a protective temporary injunction[,] there must exist a *substantial probability that jurisdiction*, judgment, and enforcement will be obtained with respect to the person sought to be affected." (emphasis added)).

In this case, the district court addressed LG's motion to dismiss for lack of personal jurisdiction and Celgard's motion for a preliminary injunction in the same order. Rather than resolve LG's motion to dismiss, however, the district court allowed jurisdictional discovery and referred the case to the magistrate judge. *Preliminary Injunction Order*, 2014 WL 3699999, at *3–4. In other words, the district court did not determine whether it had personal jurisdiction over LG for the patent infringement claim before it issued the preliminary injunction. Nor did the district court determine whether there was a substantial probability that it had personal jurisdiction over LG for the patent infringement claim. *See First Nat'l City Bank*, 379 U.S. at 390. Accordingly, because LG contested the district court's jurisdiction, it was legal error for the district court to issue this injunction without making any findings with respect to its jurisdiction over LG. *See USA-ITA*, 413 F.3d at 1348. This alone requires that we at least vacate the preliminary injunction.[1]

---

[1] After briefing for this case was completed, on May 21, 2015, the district court found that it had personal jurisdiction over LG for all of Celgard's claims, including the patent infringement claim. *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-cv-43, 2015 WL 2412467 (W.D.N.C. May 21, 2015). Although Celgard argued at oral argument that we should take judicial notice of this order and reach the merits of the district court's personal jurisdiction order without further briefing from the parties, we

## B. The Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking a preliminary injunction must establish that "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.

### 1. Likelihood of Success on the Merits

In discussing the likelihood of success of Celgard's patent infringement claim, the district court only stated that, "[h]aving reviewed description of the claims detailed in the claim charts, it appears likely that the SRS sold, offered for sale, used, and imported into this country by defendant infringes at least claim 1 of the '586 patent." *Preliminary Injunction Order*, 2014 WL 3699999, at *3–4. This single sentence fails to construe the claims or make any findings of fact regarding infringement or invalidity. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009) ("Thus the trial court first must weigh the evidence both for and against validity that is available at this preliminary stage in the proceedings."); *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1340 (Fed. Cir. 2008) ("Therefore, a correct claim construction is almost always a prerequisite for imposition of a preliminary injunction."); *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) ("Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review.").

---

decline to do so. Oral Arg. at 23:17, *Celgard, LLC v. LG Chem, Ltd.*, 2014-1675, available at, http://oralarguments.cafc.uscourts.gov/default.aspx?/fl=2014-1675.mp3.

We express no opinion regarding the likelihood of success of Celgard's patent infringement claims. We merely hold that the district court's single conclusory sentence was insufficient to support its conclusion that Celgard was likely to succeed on the merits of its patent infringement claim. Like the district court's failure to address its own jurisdiction prior to granting the preliminary injunction, the district court's lack of findings on the likelihood of success prong also requires that we at least vacate the injunction.

## 2. Irreparable Harm

LG argues that Celgard failed to demonstrate a causal nexus between Celgard's alleged harms and infringement of the '586 patent. LG contends that it has been doing the same coating process for the batteries for its CE products for years without any complaint by Celgard. We agree with LG that the district court improperly found that Celgard would suffer irreparable harm because of the alleged infringement. In addition to establishing that it will be at risk of irreparable harm, "the patentee must also establish that the harm is sufficiently related to the infringement." *Apple Inc. v. Samsung Elecs. Co.* ("*Apple II*"), 695 F.3d 1370, 1373 (Fed. Cir. 2012). In other words, "[t]o show irreparable harm, it is necessary to show that *the infringement caused* harm in the first place." *Apple Inc. v. Samsung Elecs. Co.* ("*Apple I*"), 678 F.3d 1314, 1324 (Fed. Cir. 2012) (emphasis added).

In this case, even accepting the district court's finding that Celgard will suffer irreparable harm, that harm is not caused by LG's infringement of the patent. It is undisputed that the base film that Celgard sold to LG does not practice the '586 patent. Indeed, Celgard does not sell any products that embody the claims in the '586 patent. *See* Oral Arg. at 20:38. LG creates the allegedly infringing separators using a coating method that it has used for years and that Celgard has known about since

Celgard was LG's base film supplier. Celgard does not claim it was harmed by those activities during that time frame. It is clear, accordingly, that all of the harm Celgard asserts it is now suffering stems, not from LG's process of coating the base films to create the allegedly infringing separator, but from LG's decision not to purchase base films from Celgard.

In other words, Celgard is attempting to use the '586 patent, not to prevent LG from competing against its own product, but to mandate that LG purchase an unpatented component from Celgard. In its brief, Celgard makes clear that it is really trying to obtain the injunction to force LG to purchase base film from it. *See* Appellee's Br. 52–53 ("That success, in a separate market (A1427–34), does not remedy Celgard's exclusion from [LG's] 56% market share for ceramic-coated plug-in EV battery separators."). Although a patent gives the patentee the legal right to exclude others from practicing his invention, it does not allow him to create a monopoly over an unclaimed component of that invention—here, the base film. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298–98 (Fed. Cir. 2009) (affirming the denial of a preliminary injunction because the claims did not cover the accused product). We understand Celgard's assertions that LG has a large share of the EV battery field, and that some of LG's batteries include separators that allegedly infringe claims of the '586 patent, but Celgard's alleged irreparable harm—"losing goodwill, laying off employees, and loss of market share," *Preliminary Injunction Order*, 2014 WL 3699999, at *5—is not caused by LG's manufacture or sale of those allegedly infringing separators. All of these alleged harms are caused by LG's decision not to use Celgard as its supplier for the unpatented base films.[2]

---

[2] This, of course, does not preclude Celgard from obtaining a royalty if LG is found to infringe any of the

Celgard's admission that LG has been creating infringing separators ever since Celgard began to supply base film to LG indicates that monetary damages are adequate. At oral argument, Celgard asserted that LG had an "implied license" to practice the '586 patent when it purchased the base film from Celgard. Oral Arg. at 15:16. In other words, Celgard's position is that, in the past, it licensed LG to perform the same coating process that it now accuses of infringement. Celgard's arguments that it will be irreparably harmed by LG's continued use of that coating process—even though Celgard had impliedly licensed that activity in the past—are unpersuasive. Celgard insists that the past license was tied to LG's purchase of Celgard's base film, but Celgard acknowledged at oral argument that it cannot get a positive injunction to force LG to buy Celgard's base film. *See* Oral Arg. at 20:25. And, as mentioned earlier, Celgard cannot use the '586 patent to redress alleged irreparable harm stemming from LG's decision to purchase unpatented base film elsewhere. Accordingly, Celgard can be adequately compensated for LG's use of the coating process to create allegedly infringing separators by money damages if the district court finds infringement.

Celgard has, therefore, failed to establish that it will suffer any irreparable harm caused by infringement of the claims in the '586 patent. Indeed, the undisputed evidence shows that money damages are adequate to compensate Celgard for LG's alleged infringement of the claims in the patent. Thus, the district court abused its discretion in determining that the irreparable harm factor favored granting the preliminary injunction. Because there is no irreparable harm attributable to infringement, which either Celgard or the district court has identified,

claims in the '586 patent. Nor does it limit the damages for any of Celgard's state law claims.

this factor weighs strongly against the grant of a preliminary injunction.

### 3. Balance of the Equities

The district court also abused its discretion in balancing the equities. As explained above, Celgard's harm that is caused by LG's alleged infringement of the claims in the '586 patent is adequately compensable by money damages. Furthermore, because Celgard does not sell any products that embody the claims in the '586 patent, it will not be forced to compete against its own product. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("[R]equiring [the patentee] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [the patentee]."). Celgard will, therefore, not be harmed if the district court does not enter the preliminary injunction because it can recoup adequate money damages if it successfully proves infringement. If, on the other hand, the district court were to enter a preliminary injunction, LG may have to stop production or sales, which could affect its relationships with its customers. Accordingly, the balance of equities weighs against the entry of an injunction.

### 4. Public Interest

Additionally, the district court abused its discretion in finding that the public interest weighs in favor of granting the injunction. The public has a very strong interest in guaranteeing that innovative products are available in the market. As discussed above, Celgard does not produce any products that embody the claims in the '586 patent. If LG were enjoined, the public may be completely denied the availability of any products that practice this invention, which the district court characterized as "a very important technological development that ultimately benefits consumers." *Preliminary Injunction Order*, 2014 WL 3699999, at *5. For this reason, most injunctions

granted for patent infringement claims involve situations where the patentee also practices the invention, so that the public will still have access to the patented technology. *E.g.*, *Tebro Mfg. v. Firefly Equip. LLC*, 748 F.3d 1159 (Fed. Cir. 2014); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013). In this case, moreover, third party EV manufactures may also be negatively affected if LG is enjoined. *See* Br. of Amici Curiae General Motors LLC & Ford Motor Co., at 6–15; *see also Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (considering the adverse effect on third party network carriers and manufacturers).

We therefore conclude that the public interest factor counsels against a preliminary injunction in this case.

* * *

In sum, three of the four factors weigh against entering a preliminary injunction, including the irreparable harm factor, which weighs strongly against granting an injunction because Celgard has failed to claim *any* irreparable harm caused by the alleged infringement. No matter how the district court was to resolve the likelihood of success prong, our determinations on the other three factors precludes entry of a preliminary injunction. Accordingly, even though the district court failed to consider its jurisdiction over LG with respect to the patent infringement claim, and even though the district court did not adequately make findings regarding the likelihood of success, we hold that the district court erred in granting Celgard's motion for a preliminary injunction based on a proper analysis of the other three preliminary injunction factors.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's entry of the preliminary injunction and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED**