# United States Court of Appeals for the Federal Circuit

---

**METALCRAFT OF MAYVILLE, INC.,
DBA SCAG POWER EQUIPMENT,**
*Plaintiff-Appellee*

v.

**THE TORO COMPANY,
EXMARK MANUFACTURING CO., INC.,**
*Defendants-Appellants*

---

2016-2433, 2016-2514

---

Appeals from the United States District Court for the Eastern District of Wisconsin in No. 2:16-cv-00544-WED, Chief Judge Rudolph T. Randa, Judge Lynn Adelman.

---

Decided: February 16, 2017

---

MICHAEL T. GRIGGS, Boyle Fredrickson, S.C., Milwaukee, WI, argued for plaintiff-appellee. Also represented by ADAM BROOKMAN, SARAH M. WONG.

RACHEL C. HUGHEY, Merchant & Gould P.C., Minneapolis, MN, argued for defendants-appellants. Also represented by ANTHONY RICHARD ZEULI.

---

Before MOORE, HUGHES, and STOLL, *Circuit Judges.*

MOORE, *Circuit Judge*.

The United States District Court for the Eastern District of Wisconsin granted Metalcraft of Mayville, Inc.'s motion for a preliminary injunction precluding The Toro Company and Exmark Manufacturing Co., Inc. from making, using, selling, and offering to sell lawnmowers equipped with platform suspension systems that infringe U.S. Patent No. 8,186,475 ("the '475 patent"). We affirm.

BACKGROUND

Metalcraft of Mayville, Inc., d/b/a Scag Power Equipment ("Scag"), manufactures commercial riding lawnmowers. To improve its mowers, Scag developed a suspended operator platform, which is disclosed and claimed in the '475 patent. The '475 patent discloses a suspended operator platform for a ride-on lawnmower or other riding light utility vehicle connected to a rigid chassis by a suspension system. '475 patent at Abstract, 2:33–34. The operator platform supports the entire body of the operator. *Id.* at 2:51–52. The suspension system suspends the operator platform from the chassis in a manner that isolates an operator from vibrations, or shock loads, generated by the mower during use or when driven over uneven terrain. *Id.* at 4:1–6. The operator platform can suspend or isolate some controls from the rigid chassis. *Id.* at 2:37–39. For example, the patent teaches that the steering controls may be mounted on the suspended platform. *Id.* at 2:39–41.

Scag commercialized the system disclosed in the '475 patent in its Cheetah line of lawnmowers. In 2015, both The Toro Company and its wholly owned subsidiary, Exmark Manufacturing Co., Inc., (collectively "Toro"), introduced riding lawnmowers with suspended operator platforms to compete with Scag's Cheetah line. Toro introduced the platform as part of its new MyRIDE™ suspension system, and Exmark introduced the platform as an upgrade to its Lazer Z Series lawnmowers. It is

undisputed that the steering controls in Toro and Exmark's riding lawnmowers are connected to the chassis, not the operator platform. Appellants' Br. 24, Appellee's Br. 13.

On May 5, 2016, Scag filed an infringement action against Toro in the Eastern District of Wisconsin and simultaneously filed a motion for a preliminary injunction to enjoin Toro from making, using, selling, and offering to sell lawnmowers with platform suspension systems that infringe its '475 patent. On August 1, the district court granted Scag's motion for a preliminary injunction. On August 4, Toro filed a notice of appeal and a motion to stay entry of the preliminary injunction. The district court denied Toro's motion to stay entry of the injunction and granted Scag's motion to set bond and enter the injunction order.

Toro appeals the district court's grant of a preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and (c)(1).

### DISCUSSION

In general, we review the grant or denial of a preliminary injunction using the law of the regional circuit, here the Seventh Circuit. *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016) (citing *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014)). "However, the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Id.* (quoting *Trebro*, 748 F.3d at 1165). Both the Seventh Circuit and the Federal Circuit review the grant or denial of a preliminary injunction for an abuse of discretion. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir. 1986); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir.

2008).  "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Novo Nordisk of North Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996).

The grant or denial of a preliminary injunction is within the sound discretion of the district court. *Id.* To obtain a preliminary injunction, a party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability.  *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).  A preliminary injunction should not issue if the accused infringer "raises a substantial question concerning either infringement or validity." *Amazon.com*, 239 F.3d at 1350.

## A.  Likelihood of Success

### 1.  Likelihood of Infringement

Infringement is a question of fact we review for clear error.  *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1056 (Fed. Cir. 2010).  We review claim construction de novo except for subsidiary fact findings, which we review for clear error.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015).  The factual components of claim construction include the background science or the

meaning of a term to a skilled artisan during the relevant time period. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1039 (Fed. Cir. 2016) (en banc) (quoting *Teva*, 135 S. Ct. at 841).

Asserted independent claims 11, 14, and 21 all claim "an operator platform that supports the seat and an entire body of an operator during use of the utility vehicle." '475 patent at 12:4–5, 12:27–28, 13:10–11. In opposing Scag's motion for a preliminary injunction, Toro did not dispute that its accused mowers meet the asserted patent claims, except with respect to one limitation. J.A. 374. Toro argued its accused mowers do not infringe because the accused devices do not meet the limitation "an entire body of an operator." *Id.* It argued its mowers lack this limitation because the steering controls of the accused mowers are mounted to the chassis, not the operator platform, and therefore the operator's hands and arms are not supported by the platform. J.A. 375–77.

The district court concluded that Metalcraft was likely to succeed on the infringement issue. J.A. 14. It acknowledged Toro's argument but concluded that "the fact that the defendants' lawnmowers have steering controls attached to the chassis, as opposed to the operator platform, is not a defense to infringement." J.A. 12. It construed "an operator platform that supports . . . an entire body of an operator" "in reference to how a person sits in an ordinary chair." *Id.*

On appeal, Toro argues the district court erroneously rejected Toro's noninfringement defense because the court's construction of "an entire body of an operator" excludes the operator's hands and arms. We disagree. Nowhere did the district court conclude that "an entire

body of an operator" excluded the operator's arms and hands.[1]

The district court correctly determined that the claims at issue do not require that the steering controls be mounted on the suspended operator platform. A review of the claims at issue demonstrates that none of them contain such a limitation. Unasserted dependent claims, in contrast, contain limitations that require the steering controls be connected to the operator platform. *See, e.g.,* dependent claim 12. The claims also delineate between two structurally separate elements: the operator platform that supports the seat and the entire body of the operator and the steering controls. *See id.* (requiring that the steering controls be connected to and move in unison with the operator platform). The steering controls are not claimed as a component of the operator platform. Moreover, the specification makes clear that the operator platform supports the entire body and that steering controls are connected to, but not part of, the operator platform. The specification consistently distinguishes the operator platform from components that may be attached to it,

---

[1] Toro relies for its claim that the district court held that an operator's entire body does not include an operator's arms or hands on one sentence in the district court's opinion that states "[a]ll of the accused mowers have steering controls connected to the chassis, not the suspended operator platform, which means that the platform does not support the rider's arms and hands," to understand that the district court made such a finding. We decline to interpret this single sentence, located in the middle of the court's discussion of the parties' arguments, as a fact-finding. J.A. 10. We agree with Scag that this sentence is merely part of the court's summary of the positions taken by each party and refers to Toro's position.

such as the steering controls. '475 patent at 2:39–40 ("steering controls may be mounted on the suspended platform"); *Id.* at 2:51-55; *id.* at 5:3–5 ("[s]teering controls 55 include a pair of levers 58A, 58B that are pivotally attached to the operator platform 70"); *id.* at 6:9–10 ("the components attached to the operator platform 70 such as steering controls 55"). The '475 patent makes clear that it is the suspended operator platform that supports "an entire body of an operator" and that the operator platform is a separate and distinct element from the steering controls. In light of the claims and the specification, we reject Toro's claim construction argument.

Toro also argues that the "entire body of an operator" limitation requires the steering controls be mounted on the operator platform or else the operator's hands will not be isolated from shock loads. It argues that since its accused mowers have steering controls connected to the chassis, its mowers do not isolate the operator's entire body from shock loads and therefore do not meet the "entire body of an operator" limitation. Toro improperly equates supporting the entire body of an operator with isolating every aspect of an operator's body from shock loads.

No doubt, the '475 patent discusses the advantages of isolating an operator's body from shock loads. However, the '475 patent treats supporting the entire body of an operator and isolating the operator from shock loads as two distinct aspects of the claimed invention. Referring to Figures 1 and 2, the specification states that the mower includes a suspension system that "suspends the operator platform 70 from the chassis in a manner that *isolates* an operator from vibrations, or shock-type or other loads." '475 patent at 4:1–4 (emphasis added). This is different from when it refers again to Figures 1 and 2 and states, "suspension system 100 is configured to *support* an entire body of the operator, the operator platform 70, and the components attached to the operator platform 70 such as

steering controls 55." *Id.* at 6:7–10 (emphasis added). The '475 patent uses precise language to differentiate between the distinct concepts of supporting and isolating with respect to other elements as well. The specification states, "with yet another aspect of the invention, an operator's seat is vibrationally *isolated* from a suspended operator platform," and "[*i*]*solating* the mower deck 20 from the suspension system 100 prevents scalping." *Id.* at 3:1–3, 6:22–23 (emphases added). In contrast, the specification states, "[a] drive train is *supported* in a generally rigid manner in chassis 10" and "[m]ower deck 20 is *supported* by frame 12." *Id.* at 4:9–10, 4:14–15 (emphases added).

Finally, the claim language itself keeps these concepts separate. In contrast to asserted claims 11, 14, and 21, which claim "an operator platform that *supports* the seat and an entire body of an operator," claim 5 requires "a seat and at least one elastomeric *isolation mount* connecting the seat to the operator platform *to reduce transmission of vibrations therebetween*." Since the '475 patent discerns between the invention's functionality of supporting versus isolating from vibrations, we may not import into the entire body of an operator limitation a functional requirement that every part of the body be isolated from shock loads. It would be improper to import the isolation feature into the separate entire body limitation as Toro asks us to do. As a result, we conclude that the district court did not abuse its discretion in rejecting Toro's noninfringement defense and determining that Metalcraft had established a likelihood of success on infringement.

## 2. Substantial Question of Validity

Obviousness is a question of law based upon underlying factual determinations, which we review for clear error. *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1341 (Fed. Cir. 2015). A claim is invalid for obviousness "if the differences between the claimed invention and the

prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. In determining whether there would have been a motivation to combine prior art references to arrive at the claimed invention, it is insufficient to simply conclude the combination would have been obvious without identifying any reason why a person of skill in the art would have made the combination. *See In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017). Whether a skilled artisan would have been motivated to combine the references is a question of fact. *Apple Inc.*, 839 F.3d at 1051.

Toro argued that claim 21 would have been obvious in light of U.S. Patent No. 3,420,568 ("Henriksson") and Japanese Patent Application No. JP55-69340 ("Sasaki"). Henriksson discloses a device for resilient support of a driver's compartment mounted on a vehicle frame to provide vertical movement to cushion the driver from shocks absorbed by the vehicle from the earth or road. Henriksson at 1:15–25. Sasaki discloses a device for adjusting an initial load of a spring in a damper used in a rear-wheel suspension system of a motorcycle or the like. Sasaki at 2.

Toro argued that a person of ordinary skill in the art would have been motivated to combine Henriksson and Sasaki. It argued that while Henriksson does not disclose dual (fine and course) adjusters, as claimed by claim 21,[2] dual shock adjusters were well-known in the prior art. J.A. 379. It presented Sasaki as prior art that discloses

---

[2] Claim 21 claims "a suspension system connecting the operator platform to the chassis and including (i) a course-stiffness adjuster . . . and (ii) a fine-stiffness adjuster." '475 patent at 13:12–17.

shock absorbers with both fine and course adjustment. *Id.*

The district court rejected Toro's motivation to combine argument. It recognized that "a patent 'composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art'" and that "it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." J.A. 13–14 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007)). It concluded that Toro failed to raise a substantial question of validity, stating Toro offered "no reason, and the Court cannot imagine one, that a person of ordinary skill in this field would combine a motorcycle shock with a suspended truck cab and come up with a suspended operator platform." J.A. 13–14.

On appeal, Toro argues the district court's analysis is inconsistent with *KSR*, 550 U.S. at 420–21, which stated: 'The idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve the constant ratio problem makes little sense. A person of ordinary skill is also a person of ordinary creativity, not an automaton." Toro argues it would have been obvious to a person of skill in the art to combine Henriksson and Sasaki because Henriksson sought to solve the problem of transmission of shock loads to the operator and specified conventional and telescope-type shock absorbers as methods of reducing shock loads.

We hold that the district court's finding that there would not have been a motivation to combine is not clearly erroneous. The district court correctly acknowledged that it is not enough for Toro to merely demonstrate that elements of the claimed invention were independently known in the prior art. Often, every element of a claimed invention can be found in the prior art. *In re Kotzab*, 217

F.3d 1365, 1370 (Fed. Cir. 2000). Moreover, Toro merely identifies a problem that Henriksson sought to solve. However, "knowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).

We agree with the district court that Toro provides no explanation or reasoning for concluding that one of skill in the art would have combined these particular references to produce the claimed invention. Without any explanation as to how or why the references would be combined to arrive at the claimed invention, we are left with only hindsight bias that *KSR* warns against. *See KSR*, 550 U.S. at 421. And while we understand that "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation," we also recognize that we cannot allow hindsight bias to be the thread that stitches together prior art patches into something that is the claimed invention. *See KSR*, 550 U.S. at 419, 421. For these reasons, we conclude that the district court did not abuse its discretion in rejecting Toro's obviousness defense and determining that Toro did not raise a substantial question of validity.

Toro also argued below that Henriksson anticipates claims 11 and 14. The district court found that Henriksson "discloses a heavy-duty truck with a driver's compartment, not an operator platform as described by claims 11 and 14" and therefore is not an anticipatory reference. J.A. 13. Toro challenges the district court's finding.

We decline to address the anticipation issue. A party may establish a likelihood of success by showing that at least one valid and enforceable patent claim is likely to be infringed. *Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007). Because asserted claim 21 covers the accused products and because we conclude that the district court did not abuse its discretion in determin-

ing that Metalcraft established a likelihood of success as to infringement and validity with respect to claim 21, we need not reach the anticipation arguments regarding claims 11 and 14 to sustain the injunction as to claim 21 which reaches all of the accused products.

## B.  Irreparable Harm

A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is a causal nexus between the alleged infringement and the alleged harm.  *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013).  Evidence of potential lost sales alone does not demonstrate irreparable harm.  *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).  Evidence showing that no amount of monetary damages, however great, could address the harm tends to show it is an irreparable harm.  *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable.

The district court determined that Scag is likely to suffer irreparable harm in the absence of a preliminary injunction because "it is impossible to quantify the damages caused by the loss of a potentially lifelong customer."  J.A. 15.  Toro argues the district court abused its discretion by ignoring evidence it presented of at least twelve other companies that sell mowers designed to decrease shock loads to the operator.  It also argues the court erred in accepting Scag's argument that brand loyalty resulted in the loss of "a potentially lifelong customer," and there are no facts to support this finding.  We do not find Toro's arguments persuasive.

There is no requirement that the district court discuss every fact alleged by Toro.  *See Fresenius USA, Inc. v.*

*Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009). Even if Toro means to allege that these twelve other companies have infringing lawnmowers that compete with Scag's, "[t]he fact that other infringers may be in the marketplace does not negate irreparable harm." *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). Furthermore, the district court determined "the damage to Scag is irreparable because it is impossible to quantify the damages caused by the loss of a potentially lifelong customer." J.A. 15. The fact that Toro's own Senior Marketing Manager declared that some customers "prefer to purchase an entire line of products from the same manufacturer for consistency" supports the court's determination. J.A. 15 (citing J.A. 432, ¶ 7). The district court did not clearly err on this record; the loss by Scag of customers may have far-reaching, long-term impact on its future revenues, and the sales lost by Scag are difficult to quantify due to "'ecosystem' effects, where one company's customers will continue to buy that company's products and recommend them to others." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641, 645 (Fed. Cir. 2015). "Because of its variable and uncertain nature, this loss is very difficult to calculate." *Id.* Therefore, the district court did not abuse its discretion in holding that Scag is likely to suffer irreparable harm in the absence of an injunction.

### C. Balance of Equities and the Public Interest

A party seeking a preliminary injunction must establish that "the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara*, 814 F.3d at 1352. The district court must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). It is within the court's discretion to balance the equities. *Atlas Power Co. v. Ireco Chems.*, 773 F.2d 1230, 1234 (Fed. Cir. 1985). In consid-

ering whether the public interest favors the grant of an injunction, the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief. *Hybritech*, 849 F.2d at 1458.

The district court identified the harms that Toro asserted it would suffer if enjoined as those associated with losing a patent infringement lawsuit. J.A. 17. It recognized that in the absence of an injunction, Scag would face substantial hardship in being forced "to compete against its own patented invention." J.A. 16–17. It concluded that Scag's harm in the absence of an injunction outweighs Toro's harm if enjoined. J.A. 17. It also concluded that in light of the importance of encouraging innovation and in light of the fact that the public can continue to obtain the patented suspension system from Scag or other non-infringing mowers from Toro, the public interest favors the issuance of an injunction. *Id.*

Toro argues that its harm outweighs Scag's and the injunction harms the public because it disrupts the status quo by removing from the public lawnmowers that had been available for over a year.

We are not persuaded that the district court's contrary determination was an abuse of discretion and decline to disturb the grant of the preliminary injunction on these bases.

### D. Content and Scope of the Injunction

Pursuant to Rule 65(d)(1) of the Federal Rules of Civil Procedure, every order granting an injunction must "state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." "[W]hether the terms of an injunction fulfill the mandates of Rule 65(d) is a question of law that we review without deference." *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1315 (Fed. Cir. 2004). We do not

uphold vague or overly broad injunctions because "those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974). In the patent infringement context, we have found as overly broad an injunction that "simply prohibits future infringement of a patent." *Int'l Rectifier Corp.*, 383 F.3d at 1316.

The district court's order enjoins Toro from "making, using, selling, and offering to sell lawnmowers equipped with platform suspension systems that infringe Scag's patent, U.S. Patent No. 8,186,457." J.A. 6. Toro argues the district court's preliminary injunction is overly broad. We do not agree. The Decision and Order in which the district court grants the motion for the preliminary injunction discusses both the claims at issue as well as the defendants' accused products which it enjoins. J.A. 6–18.

Claim 21 was argued to cover all the accused products, and Toro has made no meaningful arguments which delineated among the accused products. We have affirmed the district court's conclusion that the patentee has established a likelihood of success that the accused products infringe claim 21 and that there is not a substantial question of validity as to claim 21. In such a case, we affirm the preliminary injunction as to the accused products.

## CONCLUSION

For the foregoing reasons, we hold that the district court did not abuse its discretion in granting Scag's motion for a preliminary injunction. Accordingly, we affirm the district court's grant of injunctive relief on claim 21 as to the accused products.

**AFFIRMED**

COSTS

Costs to Appellee.